FILED
2021 Dec-13  AM 10:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| LAKINA HILL WILKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| ENGINEERED PLASTIC | ) | |
| COMPONENTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

COMES NOW, LaKina Hill Wilkins (hereinafter Ms. "Wilkins" or "Plaintiff"), and hereby files this Complaint against Engineered Plastic Components, Inc. (hereinafter "E P C" o r "Defendant") and states as follows:

## **JURISDICTION AND VENUE**

1.     This is an action for declaratory judgment, equitable relief and monetary damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* as amended, (hereinafter "Title VII"), which provides for relief from race and sex discrimination in employment; 42 U.S.C. § 1981 (hereinafter "Section 1981"), which prohibits discrimination predicated on race in the formation and the enforcement of contracts; the Equal Pay Act of 1963,

29 U.S.C. § 201 *et seq.*, as amended (hereinafter "EPA"), which prohibits wage disparity based on sex; and the Family and Medical Leave Act of 1993 (hereinafter the "FMLA"), 29 U.S.C. §2601 *et seq.*, as amended, which prohibits retaliation against individuals seeking to exercise their rights under the FMLA and pursuant to 28 U.S.C. §§ 1331, 1343(4), and 1367.

2.      Ms. Wilkins has fulfilled all conditions precedent to the institution of this action under Title VII. Ms. Wilkins filed her charge of race and sex discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") within 180 days of the occurrence of the last respective discriminatory act, Charge No. 420-2021-02670, on or about October 15, 2021. Ms. Wilkins was granted her notice of right to sue immediately. [See Exhibit 1, LaKina H. Wilkins' Charge of Discrimination and Notice of Rights]. All claims by Plaintiff under Section 1981 are subject to a four-year statute of limitations. *See* 28 U.S.C. § 1658. Plaintiff's claim(s) under the EPA are subject to a two-year or three-year statute of limitations [*See* 29 U.S.C. § 255], as are her claims under the FMLA. [*See* 29 U.S.C. § 2617(c)(1), (2)].

3.      The unlawful practices alleged herein were committed by Defendant in Jefferson County in the state of Alabama. Thus, venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.     Ms. Wilkins is an African American female citizen of the United  States of America, is a resident-citizen of the state of Alabama, and is over the age of 19.  At all times relevant to this action, Ms. Wilkins was employed by Defendant.

5.     Defendant is an employer in Jefferson County, Alabama and is subject to suit under Title VII.  At all times relevant  to this action, Defendant has employed at least 15 persons.

## FACTS

6.     Ms. Wilkins' affiliation with EPC began in 2013 when she began working for temporary employment staffing agency Elwood Staffing, which supplied human capital to Intertec Systems (hereinafter "Intertec") in Cottondale, Alabama.  Ms. Wilkins became a full-time employee of Intertek about a year later, as a Team Lead in the Production Department earning $14.00 per hour.

7.     Intertec  supported  the  manufacture  of  Mercedes-Benz  and  Honda automobiles by  manufacturing  various  components  made  of  plastic.   Intertec purchased a facility in Bessemer, Alabama to house certain of its operations on or about June 1, 2013.

8.     In July 2014, Ms. Wilkins was promoted to Quality Tech in the Quality Department to support the airbag deployment component of the W205 production

program.  Her salary was bumped to $37,440 annually.  Following Sam Langden's departure, Ms. Wilkins made a lateral move and assumed Langden's Airbag Deployment Specialist role and duties.

9.      Ms. Wilkins' next promotion came in January 2016 when she was elevated to Quality Engineer; her annual salary increased to $55,000.

10.     INOAC Interior Systems (hereinafter "INOAC") purchased Intertec Systems in or about September 2014.

11.     In October 2019, Jeff McAdams (Plant Manager) and Don Pickern (Production Manager) met with Ms. Wilkins about returning to the Production side of the operations.  They expressed that Ms. Wilkins' skills and leadership were needed to improve the company's productivity.  Ms. Wilkins accepted and was promoted to Production Supervisor, earning $63,742 per annum.

12.     In her role as Production Supervisor, Ms. Wilkins was paid an overtime premium of one and a half times her regular hourly pay rate for all hours worked over 40 in a workweek.

13.     Engineered Plastic Components, Inc. purchased INOAC in or about September 2020.  EPC continued operations as they were under INOAC.

14.     Greg Montgomery, the Plant Manager, met with Ms. Wilkins in May 2021 and asked her if she would like to return to the Quality area to sure up some areas of critical concern.  Her response was "No" after Mr. Montgomery indicated

that her pay would not increase.  Moreover, Quality Department personnel had to work 45 hours per week, versus 40 hours, in the Production Department, to be eligible for overtime pay.

15.    Upon information and belief, the two white males who worked the Quality position to which Mr. Montgomery wanted to assign Ms. Wilkins, Adam Henson, the Quality Manager, (hereinafter "Henson") and Rene Zimmerman (hereinafter "Zimmerman"), made $20,000 more per year than Ms. Wilkins. Moreover, Ms. Wilkins was called in to complete work left done and rectify errors and issues unresolved by Henson and Zimmerman.

16.    During a meeting on or about June 14, 2021, Steve Martin, Operational Manager, (hereinafter "Martin") announced surprisingly that Ms. Wilkins would be moving back to the Quality Department and that Rhonda Hendrix, a white female, would be replacing Ms. Wilkins as first shift Production Supervisor.  More specifically, Martin announced that Ms. Wilkins would be assigned to the Quality Lab to rectify the concerns and issues found during the AITF audit.[1]  Again, these concerns were left undone by white males Adam Henson and Rene Zimmerman, who, on information and belief, made more than $20,000 more annually than Ms. Wilkins.  The duties performed by Ms. Wilkins and the two white males in the

---

[1] The AITF audit is part of the process that automobile manufacturing suppliers undergo to receive Tier 1 supplier status/recognition, which certifies that a respective component or part supplier is fit to serve and furnish parts and components to all automobile manufacturers in the United States.

Quality Lab required "equal skill, effort and responsibility" and were "performed under similar working conditions."

17.   As she had always done, Ms. Wilkins performed her duties satisfactorily and competently when she was reassigned to the Quality Department, despite being paid about 25% less than the white men who were responsible for the job before her.

**African Americans' Pay Raises Request Rejection**

18.   On or about February 25, 2021, Ms. Wilkins and other Black Production Department employees, Jonathan Nix, Tamika Bray, and Tiffany Hampton, requested pay raises.[2]

19.   Management informed the African American employees that no Production employees would be getting pay raises in the respective year.

20.   However, based on information and belief, Caucasian female, Rhonda Hendrix received a pay raise from $70,000 to $72,000 in early February 2021. Rhonda Hendrix was a Production Supervisor, like Ms. Wilkins.  Hendrix had been employed with Defendant for only about eight (8) months, while Ms. Wilkins had been employed with Defendant over seven (7) years.

21.   Not only did Ms. Hendrix receive a pay raise while African American Production employees did not, but her pre-raise income was over 10% greater than

---

[2] Ms. Tamika Bray is now deceased.

Ms. Wilkins'.

## Family and Medical Leave

22.     Following a work-related back injury in 2015, Ms. Wilkins was diagnosed with severe lumbar sciatica and radiculopathy, a chronic condition that requires continues treatment and care.  Each time Ms. Wilkins had an episode, Ms. Wilkins had to receive treatment.  Based on the certification, Ms. Wilkins qualified for intermittent family and medical leave when her severe lumbar sciatica and radiculopathy flared up.

23.     Based on her FMLA paperwork, Ms. Wilkins' certification was good for a year.  Each time her condition flared up, she would have to be off one to five days to receive epidural injections and to take time to recover, as needed.

24.     Following each year's certification, Ms. Wilkins was required to simply provide a physician note that she needed to be off to care for the serious health condition during the respective year.  Ms. Wilkins never abused family and medical leave and never came close to exhausting her annual leave allotment.

25.     On or about August 9, 2021, Ms. Wilkins informed Henson that she needed to be off for family and medical leave.  Mr. Hinson informed Ms. Wilkins that he would not honor her request.

## LaKina Hill Wilkins' Termination

26.     On or about August 11, 2021, EPC officials Priscilla Wilson (Human

Resources representative) (hereinafter "Wilson"), Henson, and Gregory Montgomery, Facility Plant Manager, (hereinafter "Montgomery") met with Ms. Wilkins. They asked her if she was willing to move permanently to the Quality Department.

27. Again, Ms. Wilkins voiced her concern that she was having to come in and do the jobs of two white men who had failed to perform competently and were paid significantly more than she made. Yet, the company was unwilling to increase her pay by one dollar.

28. Ms. Wilkins also expressed concern that her first shift Production Supervisor position was given to a white female, who had worked with Defendant for less than a year.

29. After Ms. Wilkins voiced her objections for being discriminated against because of her race and sex, Ms. Wilson then claimed that Ms. Wilkins had some attendance issues that needed to be addressed. Ms. Wilson stated that Ms. Wilkins was in violation of EPC's attendance policy because she had accumulated too many unexcused absences in 2021.

30. However, many of the absences Ms. Wilson contended were unexcused were misstated. Ms. Wilson's list included days (i) that management sent Ms. Wilkins and others home because no production was scheduled and (ii) that management sent employees home when employees reported to work sick and it was

concerned that others would be infected.  Moreover, EPC counted as unexcused a day that Montgomery had approved Ms. Wilkins to be off for bereavement.

31.    Ms. Wilson and Mr. Montgomery terminated Ms. Wilkins for purportedly accumulating too many unexcused absences.  Ms. Wilkins had been employed with Defendant since 2014, but she had never before been cited or disciplined for any behavior, conduct, or performance issues or any violation(s) of any company policy.

## Charge of Discrimination

32.    On or about October 15, 2021, Ms. Wilkins filed a charge of discrimination in the Birmingham District Office of the Equal Employment Opportunity Commission, alleging race and sex discrimination in violation of Title VII. [*See* Exhibit 1]

33.    The EEOC granted a Dismissal and Notice of Rights on EEOC Charge number 420-2021-02670 to Ms. Wilkins immediately. [*See* Exhibit 2]

## COUNT I—TITLE VII (Race Discrimination)

34.    Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-33 as if set forth herein verbatim.

35.    Defendant paid Ms. Wilkins $63,742 annually as a Production Supervisor.  She had been employed with Defendant over six years when she was promoted to Production Supervisor.  Rhonda Hendrix, a white female, began her

employment in 2020, yet Defendant paid her at least $70,000 as a Production Supervisor.

36.  By memorandum dated February 25, 2021, Ms. Wilkins requested a pay increase.  About this time, other Africa-American employees, Jonathan Nix, Tamika Bray, and Tiffany Hampton, also requested pay raises.  They were told that no employees would get pay raises in 2021.  However, Defendant had already increased the pay of Rhonda Hendrix, a white female, in early February 2021.

37.  Defendant moved Plaintiff to the Quality Department around June 14, 2021 to essentially do the work that two white men had failed to competently complete.  The two white men were paid over 30% more than Ms. Wilkins, but Defendant refused to pay Ms. Wilkins more.   Moreover, Defendant assigned Ms. Wilkins' Production Supervisor position to Rhonda Hendrix, a white female with significantly less tenure than Ms. Wilkins.

38.  Defendant's practices set forth in this section were motivated by racial animus in violation of Title VII of the Civil Rights Act of 1964, as amended.   Defendant treated Ms. Wilkins more adversely than similarly-situated Caucasian employees in terms of compensation, benefits and other terms and conditions of his employment.  By virtue of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm, including loss of compensation/wages, back and front pay, compensatory and punitive damages, and

other employment benefits, and, as such, is entitled to all legal and equitable remedies under Title VII.

39. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged, other than this action, for back pay, compensatory and punitive damages, and injunctive and declaratory relief. Plaintiff has suffered irreparable injury from Defendant's unlawful policies and practices as set forth herein, unless remedied by this Court.

## **COUNT II—TITLE VII (Sex Discrimination)**

40. Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-39 as if set forth herein verbatim.

41. Defendant moved Plaintiff to the Quality Department around June 14, 2021 to essentially do the work that two white men had failed to competently complete. On information and belief, the two white men were paid over 30% more than Ms. Wilkins, but Defendant refused to pay Ms. Wilkins more.

42. Wilkins performed well and managed to clean up the work left undone by the male employees.

43. Defendant's practices set forth in this section were motivated by sexual animus in violation of Title VII of the Civil Rights Act of 1964, as amended. Defendant treated Ms. Wilkins more adversely than similarly-situated male employees in terms of compensation, benefits and other

terms and conditions of his employment.  By virtue of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm, including loss of compensation/wages, back and front pay, compensatory and punitive damages, and other employment benefits, and, as such, is entitled to all legal and equitable remedies under Title VII.

44.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged, other than this action, for back pay, compensatory and punitive damages, and injunctive and declaratory relief. Plaintiff has suffered irreparable injury from Defendant's unlawful policies and practices as set forth herein, unless remedied by this Court.

## COUNT III—TITLE VII (Retaliation)[3]

45.    Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-44 as if set forth herein verbatim.

46.    On or about June 14, 2021, Ms. Wilkins was asked to return to the Quality Department to rectify and complete work left undone by two white males. Ms. Wilkins asked whether her compensation would be commensurate to the white men. Defendant informed Ms. Wilkins that there would be no increase in her pay at

---

[3] Ms. Wilkins has a charge of discrimination pending in the Birmingham District Office of the Equal Employment Opportunity Commission against Engineered Plastic Components, Inc. alleging retaliation for complaining of race and sex discrimination under Title VII of the Civil Rights Act of 1964, as amended. [*See* Exhibit 2, LaKina Wilkins EEOC Charge of discrimination, dated November 16, 2021].

all; therefore, Ms. Wilkins stated that she had no interest in the Quality Engineer position.

47. Ms. Wilson of HR and management met with Ms. Wilkins on or about August 11, 2021. They asked Ms. Ms. Wilkins about returning to the Quality Department full time and indefinitely but with no increase in pay. Ms. Wilkins noted that it was wrong for whites to be paid more for doing the same work.

48. Defendant then for the first time claimed that Ms. Wilkins was in violation of the company's attendance policy and terminated Ms. Wilkins' employment.

49. Defendant's practices set forth in this section were motivated by racial animus in violation of Title VII of the Civil Rights Act of 1964, as amended. Defendant treated Ms. Wilkins more adversely than similarly-situated Caucasian employees in terms of compensation, benefits and other terms and conditions of his employment. By virtue of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm, including loss of compensation/wages, back and front pay, compensatory and punitive damages, and other employment benefits, and, as such, is entitled to all legal and equitable remedies under Title VII.

50. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged, other than this action, for back pay, compensatory and

punitive damages, and injunctive and declaratory relief. Plaintiff has suffered irreparable injury from Defendant's unlawful policies and practices as set forth herein, unless remedied by this Court.

### COUNT IV — 42 U.S.C. § 1981 (Race Discrimination)

51.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-50 above as if set forth herein verbatim.

51.    Defendant paid Ms. Wilkins $63,742 annually as a Production Supervisor. She had been employed with Defendant over six years when she was promoted to Production Supervisor. Rhonda Hendrix, a white female, began her employment in 2020; yet, Defendant paid her at least $72,000 as a Production Supervisor.

52. By memorandum dated February 25, 2021, Ms. Wilkins requested a pay increase. About this time, other Africa-American employees, Jonathan Nix, Tamika Bray, and Tiffany Bray, requested pay raises as well. They were told that no employees would get pay raises in 2021. However, Defendant had already increased the pay of Rhonda Hendrix, a white female.

53.    Defendant moved Plaintiff to the Quality Department around June 14, 2021 to essentially do the work that two white men had failed to competently complete. The two white men are believed to have been paid over 30% more than Ms. Wilkins, but Defendant refused to pay Ms. Wilkins more. Moreover, Defendant

assigned Ms. Wilkins' Production Supervisor position to Rhonda Hendrix, a white female with significantly less tenure than Ms. Wilkins.

54.     Defendant's practices set forth in this and the previous section were motivated by racial animus in violation of 42 U.S.C. § 1981. On information and belief, but for Plaintiff's race (African-American), Defendant would have compensated Plaintiff on par with her white colleagues, would not have assigned her Production Supervisor position Rhonda Hendrix, and would not have terminated Plaintiff's employment.

55.     Defendant treated Plaintiff more adversely than similarly-situated Caucasian employees in terms of compensation, benefits and other terms and conditions of his employment. By virtue of Engineered Plastic Components' discriminatory employment practices, Plaintiff has experienced extreme harm, including loss of compensation wages, back pay, compensatory and punitive damages, and other employment benefits, and, as such is entitled to legal and equitable remedies under 42 U.S.C. § 1981.

56.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged, other than this action, for back pay, compensatory and punitive damages, and injunctive and declaratory relief. Plaintiff has and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein, unless remedied by this Court.

## COUNT V—42 U.S.C. § 1981 (Retaliation)

57.     Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-56 as if set forth herein verbatim.

58.     On or about June 14, 2021, Ms. Wilkins was asked to return to the Quality Department on a temporary basis to rectify and complete work left undone by two white males.   Ms. Wilkins asked whether her compensation would be commensurate to the white men.  Defendant informed Ms. Wilkins that there would be no increase in her pay at all; therefore, Ms. Wilkins stated that she had no interest in the Quality Engineer position.

59.  Ms. Wilson of HR and management met with Ms. Wilkins on or about August 11, 2021.  They asked Ms. Ms. Wilkins about returning to the Quality full time and indefinitely but still with no increase in pay.  Ms. Wilkins noted that it was wrong for white to be paid more for doing the same work.

60.     Defendant then for the first time claimed that Ms. Wilkins was in violation of the company's attendance policy and terminated Ms. Wilkins' employment.

61.     Defendant's practices set forth in this section were motivated by retaliatory animus in violation  of 42 U.S.C. § 1981, as amended.   Defendant terminated  Ms. Wilkins after she complained about being paid significantly less than her white male counterparts.  By virtue of Defendant's

retaliatory employment practices, Plaintiff has experienced extreme harm, including loss of compensation/wages, back and front pay, compensatory and punitive damages, and other employment benefits, and, as such, is entitled to all legal and equitable remedies under 42 U.S.C. § 1981.

62.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged, other than this action, for back pay, compensatory and punitive damages, and injunctive and declaratory relief. Plaintiff has suffered irreparable injury from Defendant's unlawful policies and practices as set forth herein, unless remedied by this Court.

### COUNT VI — Equal Pay Act (Sex Discrimination)

63.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-62 above as if set forth herein verbatim.

64.    Defendant moved Plaintiff to the Quality Department around June 14, 2021 to essentially do the work that two white men had failed to competently complete. On information and belief, the two white men were paid over 30% more than Ms. Wilkins, but Defendant refused to pay Ms. Wilkins more.

65.    Ms. Wilkins performed well and managed to clean up the work left undone by the male employees, but she was paid significantly less for doing work which required equal skill, effort, and responsibility, and which was performed under similar working conditions as her male counterparts.

66.     Defendant's pay practices set forth in this section were in violation o f the Equal Pay Act of 1963, 29 U . S .C. § 621 *et seq.*

67.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged, other than this action, for back p a y , l i q u i d a t e d d a m a g e s , a n d injunctive and declaratory relief. Plaintiff has and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein, unless remedied by this Court.

## COUNT VII -- Family and Medical Leave Act (Retaliation)

68.     Plaintiff r e - alleges and incorporates the allegations set forth in paragraphs 1-67 above as if set forth herein verbatim.

69.     Ms. Wilkins sought to exercise her rights under the Family and Leave Act to care for her own serious health condition of chronic depression in June 2021. Ms. Wilkins family and medical leave paperwork was certified on or about October 20, 2020 for intermittent leave. Per the FMLA documentation, the certification was good for an entire year.

70.     Despite Plaintiff's certification, her manager, Adam Henson, expressed his displeasure with Plaintiff taking the leave and initially refused to permit Ms. Wilkins have the time off.

71.     On or about August 11, 2021, Ms. Wilkins met with human resources and management personnel. EPC expressed during the meeting that Ms. Wilkins

was in violation of the company's attendance policy. This was a mere pretext, as Ms. Wilkins never violated Defendant's attendance policy.

72.    Defendant terminated Ms. Wilkins' employment on or about August 12, 2021.

73.    Prior to Ms. Wilkins exercising her rights under the Family and Medical Leave Act, she had never been disciplined.  Moreover, Defendant never raised any concern regarding Ms. Wilkins' attendance before August 11, 2021.

74.    Defendant's retaliated and discriminated against Ms. Wilkins for exercising her rights under the Family and Medical Leave Act of 1993.  *See* 29 U.S.C. § 2615(a); 29 C.F.R. 825.220.

75.    In retaliating against Ms. Wilkins for exercising her statutory rights under the Family and Medical Leave Act, Defendant failed to act in good faith and had no reasonable grounds to believe that the action(s) taken against Plaintiff were not violative of the FMLA.

76.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged, other than this action, for back pay, liquidated damages, and injunctive and declaratory relief. Plaintiff has and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein, unless remedied by this Court.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this honorable Court

assumes jurisdiction of this action and after trial:

1.      Issue a declaratory judgment that the employment policies and practices,

conditions, and customs of Engineered Plastic Components violated the rights of

Plaintiff as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 1981, as amended, the Equal Pay Act, as amended, and the Family and Medical Leave

Act, as amended.

2.      Grant Plaintiff a permanent injunction enjoining Defendant, its agents,

successors, employees, attorneys and those acting in concert with Defendant and at

Defendant's request from continuing to violate Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 1981, as amended, the Equal Pay Act, as amended, and

the Family and Medical Leave Act, as amended.

3.      Enter an Order requiring Defendant to make Plaintiff whole by awarding

Plaintiff (i) the   position and compensation she would have had in the absence of its race

and/or disability discrimination or, alternatively, award Plaintiff an appropriate level of

front pay; (ii) back pay;  (iii) lost seniority; (iv) compensatory damages for the

humiliation, embarrassment, and other emotional harm Plaintiff has endured due to

Defendant's discriminatory practices, and (v) lost benefits.

4.      Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of punitive damages, costs, attorneys' fees and expenses.

## **JURY DEMAND**

**Plaintiff demands a trial by struck jury on all issues so triable.**

**THE UNDERSIGNED COUNSEL WILL PROVIDE THE SERVICE MATERIALS TO CLERK OF COURT FOR DELIVERY TO DEFENDANT ENGINEERED PLASTIC COMPONENTS.**

Respectfully submitted, this 12th day of December, 2021.

*/s/ Robert L. Beeman, II*
Robert L. Beeman, II
Attorney for Plaintiff
Alabama Bar No. 1838-E63R
P.O. Box 253
Helena, AL 35080
Rlbsportsmgnt12@gmail.com
205.422.9015 (P)
800.693.5150 (F)

*/s/ Roderick T. Cooks*
Roderick T. Cooks
Attorney for Plaintiff
Alabama Bar No. 5819-O78R
Winston Cooks, LLC
505 20th Street North, Suite 815
Birmingham, AL 35203
rcooks@winstoncooks.com
205.502.0970 (P)
205.278.5876 (F)

## CERTIFICATE OF SERVICE

I hereby certify a copy of the Complaint has been (or will be) arranged to be served on Defendant by the clerk of court at the address below.  Done this 12th day of December, 2021.

/s/Robert L. Beeman, II_____
Robert L. Beeman, II
[ASB-1838-E63R]

**DEFENDANT'S ADDRESS**:

Engineered Plastic Components, Inc.
  c/o Mr. Reza Kargarzadeh
4500 Westown Parkway, Suite 277
West Des Moines, IA 50266